RECEIVED
MAR 0 2 2005
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ROY LEE GREEN            STATE DOCKET

VERSUS                  NO.: 970197-B

TIM WILKINSON, WARDEN
WINN CORRECTIONAL CENTER

5:05cv397
SCP
Judge Walter
Mag - Hornsby

MEMORANDUM OF LAW IN BRIEF

ROY LEE GREEN, petitioner in this matter, was charged with committing the offense of Forcible Rape. This offense was alleged to have occurred on December 27, 1996, and the purported victim was SHELIA GRANT. During the course of the trial only one witness testified that petitioner committed forcible rape, that was Shelia Grant. The State's other witnesses could provide only the information that Ms. Grant was upset, confused, bruised, had on torn clothing, and had grass on her when she returned from the Lame Duck Bar. The police officers testified that a jacket belonging to petitioner was recovered and that it had grass seeds on it, as had Ms. Grant's clothing. Based on Ms. Grant's testimony and the circumstantial evidence provided by the other witness, petitioner was convicted of the alleged offense of forcible rape on this victim.

The trial court then imposed the maximum sentence of forty (40) years imprisonment with the first two years to be served without benefit of parole, probation or suspension of sentence.

-2.-

The multiple offender bill of information filed by the State was withdrawn prior to sentencing. An oral motion to reconsider that sentence was urged, but denied. Petitioner is appealing ther conviction and sentence, affirmed, by the Court in this case.

The issues for review are wherther, after viewing the evidence submitted in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. JACKSON V. VIRGINIA, 442 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The due process standard of JACKSON, does not provide reviewing courts with a mechanism to second guess the rational credibility determinations of the fact-finder, but it also does not allow jurors to engage in speculation if the evidence is such that a reasonable juror must have a reasonable doubt. STATE V. HARRIS, 647 So.2d 337 and STATE V. KEYS, 694 So.2d 1107.

ROY GREEN was accused by Shelia Grant of raping her on December 27, 1996. Ms. Grant left the home of a friend, Josephine Brown, and when she returned her clothing was torn, she had grass on her and she was scared, upset, and confused. Shelia Grant is a thirty-eight (38) year old woman with a third grade education, who is mentally impaired. Ms. Grant was quite clearly confused while testifying. On occasion her answers were not related to the question asked or she changed her answer. When asked why she receives a government check Ms. Grant began to relate the events of December 27th. Ms. grant also testified first that she went to Josephine Brown's house after she left the Lame Duck and before

the alleged rape, and then when asked a leading question by the prosecution, testified that she was thrown to the ground before she got to the Brown's home. First, Ms. Grant testified that she did not buy "no beer or cigarettes" that night, and then immediately states that when she got to the Lame Duck she got two 40-ounce Buds on credit as well as cigarettes. She went on to testify that she was thrown to the ground by Mr. Lee and that he had her so tight that she fell down on the ground.

Ms. Grant's testimony was also at odds with the testimony of other witnesses. She testified that Roy Green was alone outside the Lame Duck when she arrived and everyone else was inside and that she purchased the beer and cigarettes. However, Mr. Green and Don Brown both testified that they were together outside and that Ms. Grant was talking to two other men. In fact, the testimony was that one of the men went inside to purchase Ms. Grant's beer and cigarettes, and she stayed outside talking to the other men.

Petitioner alleges that the rape victim's testimony was contradictory, confusing, and therefore, not sufficient as grounds for a conviction. The U.S. Constitution provides that no person shall be "deprived of life, liberty, or property without due process of law." The Fifth Amendment applies this limitation to the federal government, while the Fourteenth Amendment imposes the same restriction on the states. Implicit in the due process clause is the protection of an accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.

IN RE WINSHIP, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368, (1970); JACKSON V. VIRGINIA, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); STATE V. GOODJOINT, 716 So.2d 139.

Thus, an accused has a constitutional right to appellate review of the evidence to determine whether the record could support a finding of guilt beyond a reasonable doubt. JACKSON V. VIRGINIA, supra; STATE V. BOSLEY, 691 So.2d 347, writ denied, 701 So.2d 1333.

The Court in IN RE WINSHIP, supra, explicitly held that "the due process clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." The Court in JACKSON went on to state that: "In short, WINSHIP presupposes as an essential of the due process guaranteed by the Fourteenth Amendment taht no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof - defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." JACKSON at p. 316.

Note that Ms. Grant was described as more than upset the night she was raped. She was described as confused. Ms. Brown described her as confused and so did Dy. Thomas. Dy. Jones did not describe her as confused and in fact said she was not incoherent. However, Dy. Jones then goes on to describe the conflicting statements he was given as to the color of the jacket. It seems very clear that Ms. Grant's confusion did not end that night. During the trial Ms. Grant even stated more than once that it was the doctor who told her she was raped. When questioned about that phrase her explanation was that she had known prior to the Doctor telling her that because, "Mr. Green put his penis in her vagina." This is a very sophiscated answer coming from a woman who cannot respond to simple questions concenring why she receives a government check, what color a jacket was, and she does not know what a menstral cycle is.

The lab report introduced at evidence does not provide any additional information which would lead to the conclusion that Mr. Green raped Ms. Grant. In fact, no traces of acid phosphates or spermatozoa were found in the vaginal swab. Further, while Ms. Grant testified that she was on her period and there was blood on her clothing, no blood was detected on Mr. Green's person or clothing. The only blood found was Ms. Grant's blood on her clothing. If in fact there had actually been a forced entry in the vaginal cavity of this witness, Mr. Green would most definitely had some form of this person's blood on his clothing and/or his pubic area. However, let's note that, the DNA test performed on this petitioner came back negative for anything relative to blood belonging to the victim.

What was left on the state's case in point went completely to the condition of Ms. Grant on the night in question. No one testified that they saw Ms. Grant and Mr. Green together that night. The identity of he attacker was not verified nor was it substantiated by any other witness or evidence. The state's verification came from the fact that a man, who engaged in physical labor, had a fight within a week before and fell that night hurting his hand, had scratches or cuts on his hands and one bloodshot eye. The only other support for Ms. Grant's identification was the fact that Mr. Green had some sort of grass seeds on his jacket and in his hair that night. These seeds were referred to as beggar's lice. Dy. Jones testified that he walked the trail "for a ways" and did not find any other beggars lice.

Dy. Jones does not testify that he checked the entire area or that he checked Mr. Green's yard. He simply reached the conclusion that there was no other location where these seeds could be picked up. He also reached the conclusion that in order to have them on his jacket and in his hair Mr. Green would have to lie on the ground. Of course, Mr. Green testified that he fell that night. Therefore, it is possible that these seeds got on his head and jacket that way. The deputy also did not take into account the fact that seeds, as nature intended, are transferred from one location to another by contact. In other words, if Mr. Green brushed off his pants legs, he could have transferred seeds anywhere else that he touched.

The evidence presented at trial was clearly not sufficient to support a verdict of guilty of forcible rape. Shelia Grant was the only eyewitness, and her testimony was contradictory and confusing. The existence of some seeds and scratches hardly justifies the finding of guilt. While it is clear that Ms. Grant was a figure that elicited sympathy, that is simply not

sufficient grounds for a conviction. It is not only that others contradicted her testimony, she actually contradicted herself repeatedly. In addition, she was unable to make appropriate responses to even the simplest of questions at times. Her testimony, standing alone, does not offer proof beyond a reasonable doubt. The additional circumstantial evidence did little to raise the State's offer of proof to the level required for a finding of guilt beyond a reasonable doubt.

DISCUSSION NUMBER TWO

The sentencing Judge is given wide discretion in imposing a sentence within the statutory limits and such a sentence should not be set aside as excessive in the absence of a manifest abuse of discretion by the sentencing Judge. STATE V. BONNANNO, 384 So.2d 355 (1980) and STATE V. CUNNINGHAM, 431 So.2d 854 (1983). A sentence is constitutionally excessive in violation of Louisiana Constitution of 1974 Art. 1, §20, if it is grossly out of porportion to the severity of the offense or nothing more than a needless imposition of pain and suffering.

A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of harm done to society, "it shocks the sense of justice." STATE V. HOGAN, 480 So.2d 288 (1985); STATE V. RICHARDSON, 545 So.2d 714 (1980); STATE V. MAJOR, 604 So.2d 137 (1992). The sentencing guidelines in LSA-C.CR.P. Art. 894.1 are designed to assure that a particular sentencing choice is tailored to a particular defendant and that the sentence is proportionate to those of other, similarly situated offenders. STATE V. MAYFIELD, 493 So.2d 652 (1986). The designated sentence range in the sentencing guidelines grid is the basis for the sentence for any offender convicted of a felony. La. sentencing guidelines §201(A). Sentences greater than the penalty within the designated sentence range should be made when one or more aggravating circumstances, listed in La. S.G. §209(B), significantly differentiates the

particular case from the "typical case." STATE V. GIBSON, 628 So.2d 156 (1993); STATE V. BROWN, 616 So.2d 792 (1993).

In order for such an aggravating circumstance to serve as a basis for an upward departure, the sentencing court must find that it is present to a degree which significantly enhances the severity of the offense. **"The Court must specify for the record the aggravating circumstances which justify the departure."** La. Admin. Code, tit. 22, §209(A)(5) (1993). STATE V. SMITH, 629 So.2d 333 (1993).

This sentencing Judge failed to articulate for the record the aggravating issues that were relied upon in his departure from the guidelines in imposing a penalty upon Mr. Lee. Because of this failure petitioner has been suffering serious losses of both his liberty and family interest. Also, petitioner seeks to have this matter reversed based on the premise as noted herein, and remanded back to the Louisiana District Court for the explicite reasons as stated within the context of this petition.

READ AND SIGNED THIS 5th DAY OF February, 2005

RESPECTFULLY SUBMITTED,

ROY LEE GREEN, #238081
WNC B-C2, P.O. BOX 1260
WINNFIELD, LA 71483-1260

DISCUSSION NUMBER THREE

Petitioner asserts that his conviction and sentence are illegal because he was forced to endure his trial without the effective assistance of counsel, and he did nothing to protect the liberty interest of this petitioner, whom is entitled to the effective asistance of counsel. STATE V. BROOKS,661 So.2d 1333 (1995). The United States Supreme Court has also held that a criminal defendant in such proceedings at which the defendant is entitled to the effective counsel guaranteed by the Constitution. GARNER V. FLORIDA, 430 U.S. 349, 358, 97 S.Ct. 1197, 1205, 51 L.Ed.2d 393 (1977).

In the instant case, petitioner asserts that he was constructive counsel at his trial where counsel failed to adequately investigate issues in that, the rape kit taken from him and the victim proved that this petitioner was not involved in this crime. Actually, there was no direct evidence showing or otherwise proving that this petitioner participated in the crime against this victim or any other for that matter. In evaluating a claim of ineffective assistance of counsel, the court must first determine whether a reasonable investigation of the circumstances would have or could have rendered the process reliable. Counsel has a duty to look into each and every possible avenue that would possibly show that this petitioner was wrongly indicted for this offense. STATE EX REL BUSBY V. BUTLER, 538 So.2d 164 (1988).

Nevertheless, petitioner avers that his attorney of record failed to investigate his case, interview such witnesses as would have

-10.-

have rendered the adverarial process definitely forth coming. In short, the courts have held that a constructive denial of counsel occurs when a criminal defendant must navigate a critical stage of the proceeings against him without the aid of an attorney whom is dedicated to the protection of his client's rights under our adversarial system of justice. CHILDRESS V. JOHNSON, 103 F.3d 1221 (1997).

Generally, a claim of ineffective assistance of counsel would be reviewed under the two-pronged test announced in STRICKLAND V. WASHINGTON, 466 U.S. 668, (1984). However, a claim of constructive denial of counsel is distinct from a claim of ineffective assistance of ounsel, which has different requirements, whereby the claimant in that instance has the burden of proving that he was prejudiced as a result of counsel's unprofessional errors. In contrast, a claim of such a magnitude and denial of counsel, whereas prejudice need not be proved because prejudice resulting from the constructive denial of counsel is presumed. See, CRONIC, at 659, 104 S.Ct. 2046.

Moreso, the record has failed to prove beyond a reasonable doubt that this petitioner was in fact the perpetrator of this offense, counsel's inadequate performance and lack of investigative circumstances failed to provide him with the protective and fundamental issues guaranteed through the constitution, therefore depriving him of the effective assistance from his attorney at the trial in this matter.

THUS SIGNED THIS ___ day of FEBRUARY _____, 2005.